NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| THE MALL AT IV GROUP PROPERTIES, LLC, and SP ACQUISITION ASSOCIATES, LLC, | : : : : | **OPINION** |
| Plaintiffs, | : : : | Civil Action No. 02-4692 (WHW) |
| v. | : : : | |
| LUCILLE ROBERTS, BOB ROBERTS, KEVIN ROBERTS TRUST, KIRK ROBERTS TRUST, LRHC, INC., LUCILLE ROBERTS HEALTH CLUBS, INC., L.R. FITNESS, INC., ROBERTS EQUITIES GROUP, INC., LUCILLE ROBERTS THE FITNESS AND DIET PLACE, INC., LUCILLE ROBERTS - THE DIET PLACE HOLDING CORP., ROBERTS PAYMASTER, INC., THE ESTATE OF LUCILLE ROBERTS, DUES COLLECTION FITNESS CLUBS, LLC, ADVANCED PAYROLL SERVICES, LLC, and FITNESS FOR WOMEN MANAGEMENT, LLC, | : : : : : : : : : : : : : : : | |
| Defendants. | : : | |

**Walls, District Judge**

Plaintiffs move for partial summary judgment on the first and second counts of the complaint. Defendants cross-move for summary judgment on all counts. The motions are denied.

**FACTS AND PROCEDURAL BACKGROUND**

Plaintiffs, having won state court judgments against entities known as LRHC Paramus, N.J., Inc. d/b/a Lucille Roberts ("LRHC Paramus") and LRHC Toms River, N.J., LLC d/b/a

NOT FOR PUBLICATION

Lucille Roberts ("LRHC Toms River"), now seek to recover the amount of those judgments against defendants, the alleged shareholders, members, officers, directors, and owners of the judgment debtors.  Plaintiffs allege that defendants acted as the alter egos of the judgment debtors and seek to "pierce the corporate veil" and assign joint and several liability to the defendants for the judgment debts.  Plaintiffs additionally allege fraud, conspiracy to commit fraud, and fraudulent transfers in violation of the New Jersey Fraudulent Conveyance Act, N.J.S.A. 25:2-25, et seq.

The fitness clubs in Paramus and Toms River were, before their closing, part of the chain of Lucille Roberts health clubs in New York, New Jersey, and Pennsylvania.  The individual clubs are owned or controlled, at least to some degree, by Lucille Roberts, Bob Roberts, the Kevin Roberts Trust and/or the Kirk Roberts Trust.  Bob Roberts and Lucille Roberts, before her death in August 2003, made the ultimate business decisions on behalf of all of the clubs.  In addition to the individual clubs, numerous other Lucille Roberts related entities were or are owned by these defendants.

LRHC Paramus and LRHC Toms River are entities formed to operate individual Lucille Roberts health clubs.  LRHC Paramus is a New Jersey corporation with Lucille Roberts as the sole shareholder and Bob Roberts as the director.  LRHC Toms River is a New Jersey Limited Liability Company (LLC), with Lucille Roberts as the general partner and the Kevin Roberts Trust and Kirk Roberts Trust as limited partners.  Both LRHC Paramus and LRHC Toms River executed rental leases for the operation of their respective clubs, but later stopped paying rent (plaintiffs Mall at IV in Paramus and SP Acquisition Associates in Toms River are the successors

**NOT FOR PUBLICATION**

to the original landlords). In 2004, plaintiffs won revised and amended final judgments in New Jersey state court against the two entities totaling approximately $1.3 million. Mall at IV was awarded $802,766.27 against LRHC Paramus; SP Acquisition Associates was awarded $505,522.24 against LRHC Toms River. Both judgments provide for post-judgment interest.

      Plaintiffs allege that defendants Lucille Roberts, Bob Roberts, the Kevin Roberts Trust and the Kirk Roberts Trust created LRHC Paramus and LRHC Toms River for the purpose of taking title to the leases at issue in the underlying state litigations "without assuming any of the related monetary obligations." Plaintiffs allege that LRHC Paramus and LRHC Toms River had little capital or assets, were undercapitalized throughout their existence, and were operated with funds commingled with assets from other defendants. Plaintiffs argue that monthly revenues from all of the Lucille Roberts fitness clubs and related entities were deposited into a central bank account, bills and expenses for all of the clubs and related activities were paid from a central account, Lucille and/or Bob Roberts funded shortfalls at individual clubs with their own personal funds, and all of the clubs and related entities used and were insured under the same umbrella insurance policy. Moreover, plaintiffs point out that all Lucille Roberts fitness clubs shared the same corporate address and phone number, which was also the personal address for Lucille and Bob Roberts. Plaintiffs cite records showing that personal expenses and loans were paid out of the Roberts Paymaster central corporate account.

      Defendants counter that the corporate form was respected and that forming individual clubs as limited liability entities is a perfectly legitimate business practice. Defendants argue that plaintiffs were fully aware that they were contracting with limited liability entities and did so

**NOT FOR PUBLICATION**

with full knowledge of the risks.  Moreover, defendants argue that they lost more than $800,000 in operating the two clubs.  Defendants deny any fraud or wrongdoing and assert that there is no basis to pierce the corporate veil of either LRHC Paramus or LRHC Toms River.

Defendants' earlier motion for summary judgement was denied on November 10, 2003.  Plaintiffs now move for partial summary judgment on the following counts:  (1) Alter Ego, and (2) Piercing the Corporate Veil.  Defendants cross-move for summary judgment on all counts, including:  (3) Fraud, (4) Conspiracy to Commit Fraud, and (5) Fraudulent Transfers in Violation of N.J.S.A. 25:2-25 et seq.

**LEGAL STANDARD**

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(C).  A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit.  Id. at 248.  The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof.  Celotex v. Catrett, 477 U.S. 317, 318 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  To survive a

NOT FOR PUBLICATION

motion for summary judgment, a non-movant must present more than a mere scintilla of evidence in his favor. Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001). At the summary judgment stage the Court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. In doing so, the Court must construe the facts and inferences in the light most favorable to the non-moving party. Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002).

**DISCUSSION**

The first question presented is whether LRHC Paramus and LRHC Toms River are the alter egos of defendants so that the corporate veil should be pierced and liability imposed. The second question is whether, viewing the facts and inferences in the light most favorable to plaintiffs, there is a legitimate issue for trial on the claims of fraud, conspiracy to commit fraud, and fraudulent transfers. Because this case is in federal court based on the diversity jurisdiction of 28 U.S.C. § 1332, New Jersey state law applies. Fed. Home Loan Mortgage Corp. v. Scottsdale Ins. Co., 316 F.3d 431, 443 (3d Cir. 2003).

**I. Piercing the Corporate Veil**

Piercing the corporate veil is an equitable remedy through which a court may impose liability on an individual or entity normally subject to the limited liability protections of the corporate form. In New Jersey, courts "begin with the fundamental propositions that a

NOT FOR PUBLICATION

corporation is a separate entity from its shareholders, and that a primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise." State Dept. Of Environ. Protection v. Ventron Corp., 94 N.J. 473, 500 (1983) (citations omitted). Limited liability "normally will not be abrogated," and the corporate veil will only be pierced "in cases of fraud, injustice, or the like." Id.

In New Jersey and most other jurisdictions, there are two overarching elements required to pierce the corporate veil: "First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist. Second, the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." 1 William Meade Fletcher et al., Fletcher Cyclopedia of the Law of Private Corporations, § 41.30 (perm. ed., rev. vol. 1999); see also Ventron, 94 N.J. at 500 ("even in the presence of corporate dominance, liability generally is imposed only where the [dominant party] has abused the privilege of incorporation by using the [corporate form] to perpetrate a fraud or injustice, or otherwise to circumvent the law"). In determining whether the first element has been satisfied, a number of factors must be considered, including: gross undercapitalization, failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-function of other officers or directors, absence of corporate records, and the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders. Craig v. Lake Asbestos of Quebec, Ltd., 843 F.2d 145 (3d Cir. 1988) (applying New Jersey law). With regard to the second element, there must be some "wrong" beyond

**NOT FOR PUBLICATION**

simply a judgment creditor's inability to collect (otherwise, the corporate veil would be pierced in virtually every case). See, e.g., Sea-Land Services, Inc. v. The Pepper Source, 941 F.2d 519, 522 (7th Cir. 1991) ("The prospect of an unsatisfied judgment looms in every veil-piercing action; why else would a plaintiff bring such an action?"). Plaintiff need not prove common law fraud, however, but rather must meet the less rigid standard of "fraud, injustice, or the like." Kuibyshevnefteorgsythez v. Model, No. 93-4919, 1995 WL 66371 at 15 (D.N.J. Feb. 6, 1995) (quoting Ventron, 94 N.J. at 500; Allied Corp. v. Frola, 701 F. Supp. 1084, 1089 (D.N.J. 1988)). An examination of the parties' conduct to determine whether fraud or injustice has been committed is therefore central to the Court's inquiry.

### A. LRHC Paramus

LRHC Paramus presents an interesting case. Plaintiffs contend that the only thing the entity ever did was execute a lease. According to defendants, however, LRHC Paramus took the critical step of legally assigning that lease to another entity, The Fitness Place Paramus, NJ, L.P. ("Fitness Place Paramus"), a few months later. Before the Court may address the veil-piercing issue, it must first examine the validity of the lease assignment and the resultant liabilities and obligations of the parties.

It does not appear that the landlord's permission was required to assign the lease. The lease provides that "Tenant shall be permitted without Landlord's consent to assign or sublet this lease . . . to any corporation which controls or is controlled by the Tenant." (Bruckner Aff. Ex. A at 11). There does not seem to be any dispute as to defendants' assertion that, at the time of

**NOT FOR PUBLICATION**

assignment, LRHC Paramus owned 52% of Fitness Place Paramus, and, consequently, controlled it. (Bruckner Aff. Ex. C).

Accepting that permission to assign the lease was not required, there remain material facts in dispute as to whether proper notice of assignment was provided to the landlord. The lease between LRHC Paramus and Mall at IV provides, in Article 11, "Assignment, Subletting and Mortgaging," section 11.04, that:

> Any permitted assignment or transfer, whether made with Landlord's consent pursuant to Article 11.01 or without Landlord's consent if permitted by Article 11.02, shall be made only if, and *shall not be effective until, the assignee shall execute, acknowledge and deliver to Landlord an agreement in form and substance satisfactory as set forth by the Terms and Conditions of this Lease* whereby the assignee shall assume Tenant's obligations under this Lease and whereby the assignee shall agree that all of the provisions in this Article 11 shall, notwithstanding such assignment or transfer, continue to be binding upon it in respect to all future assignments and transfers.

(Bruckner Aff. Ex. A at 12) (emphasis added). Defendants submit a one paragraph letter, dated April 13, 1994, and a Certified Mail receipt which they say proves that assignment was made on April 2, 1994. (Bruckner Aff. Ex. C). Plaintiffs counter that, even if the letter is valid, no agreement was ever provided to the landlord as required by section 11.04. In response to this point, defendants argue that, by not objecting to the notice of assignment and by accepting rent payments from Fitness Place Paramus, plaintiffs waived the right to insist that such an agreement be provided (although defendants do not concede that the agreement was never provided).

Defendants argue that a valid assignment, "as a legal matter, eliminates the relevance of Paramus Inc. to this suit and resolves any question as to its lack of funds or a general ledger." (Def.'s Opp'n Br. at 15). Defendants' assertion aside, the question is not so easily disposed of.

**NOT FOR PUBLICATION**

The express terms of the lease provide that, "[n]otwithstanding any assignment or transfer . . . the original Tenant . . . shall remain fully liable for the payment of the Rent and for Tenant's obligations under this Lease." (Bruckner Aff. Ex. A at 12). Under the law of contract, LRHC Paramus retains liability for the unpaid rent that is the subject of the underlying state court judgment, unless there has been a novation:

> An assignment is an expression of intention by the assignor that his duty shall immediately pass to the assignee. Many a debtor wishes that by such an expression he could get rid of his debts. Any debtor can express such an intention, but it is not operative to produce such a hoped-for result. . . . A duty can never be escaped by assignment . . . . If it clearly appears from the terms of the assignment transaction that the assignee intends to undertake the duty to perform for the assignor, and that the latter intends to be himself no longer bound, there is a discharge of the assignor by novation if the third party accepts performance by the assignee with knowledge of the terms of the assignment or otherwise assents to those terms.

4 Arthur Linton Corbin, Corbin on Contracts § 866 (1951). "In order to effect a novation there must be a clear and definite intention on the part of all concerned that such is the purpose of the agreement, for it is a well-settled principle that novation is never to be presumed." Tolland v. Lista, 134 A.2d 601, 603-04 (N.J. Super. Ct. App. Div. 1957).

In this case, the terms of the assignment are extremely limited and do not make clear that the assignor (LRHC Paramus) did not intend to be further bound. The express language of the lease indicates that LRHC Paramus remains bound. No evidence shows that the assignee (Fitness Place Paramus) ever provided an adequate agreement to the third party (Mall at IV), as required by the lease. The Court need not determine whether there was a valid assignment, because it now holds that there was no valid novation under the facts presented. While the circumstances surrounding the assignment are likely to be probative in determining whether the

**NOT FOR PUBLICATION**

actions of LRHC Paramus "perpetrated injustice,"[1] if the veil-piercing criteria are met as to LRHC Paramus, assignment of the lease alone is inadequate to avoid liability.

Having determined that LRHC Paramus is a valid judgment debtor subject to veil-piercing analysis, the Court must undertake such analysis. A veil-piercing determination is factually intensive, and there are many facts in dispute here. Despite plaintiffs' contention that LRHC was a "sham" entity, defendants articulate a plausible explanation why the corporate form was neglected: the lease was assigned shortly after it was executed for commercial reasons. Plaintiff also bears the burden of proving that defendant has perpetrated fraud or injustice, an analysis which will undoubtedly address the intent and knowledge of the parties. Defendants argue, for example, that plaintiffs were fully aware of the limited liability and limited assets of LRHC Paramus, and that the lease was undertaken with full disclosure at a time when plaintiffs needed tenants for their commercially struggling properties. Given these and other factual uncertainties, the Court cannot say, at the summary judgment stage, that the extraordinary remedy of piercing the corporate veil of LRHC Paramus is warranted.

The final issue with regard to LRHC Paramus is that another entity, Lucille Roberts Health Clubs, Inc. ("LRHC, Inc."), served as guarantor for the lease. As a result, Mall at IV obtained a state court judgment of $105,031.86 against LRHC, Inc. Plaintiffs now seek to pierce the guarantor's corporate veil because that entity became judgment proof in 1996 after its assets

---

[1] One such circumstance, which gives the Court pause, is plaintiffs' assertion that defendant litigated on behalf of LRHC Paramus in state court for four years without ever disclosing that the lease had been assigned. While plaintiffs were ostensibly on notice of such assignment as a result of the April 13, 1994 letter, if the assignment was made for a legitimate business purpose and not to perpetrate a fraud or injustice, the Court does not see why such assignment was not disclosed during the course of that litigation.

**NOT FOR PUBLICATION**

were transferred to another entity owned by defendants, Roberts Paymaster, Inc.  Defendants counter that no specific claim is made in the complaint in support of piercing the corporate veil of LRHC, Inc.  Defendants additionally point out that the guarantee includes a non-recourse provision, which says that "[n]o recourse shall be had on any of Guarantor's obligations against any incorporator, subscriber to the capital stock, shareholder, officer, director, past, present, or future, of an [sic] corporation or partnership or joint venturer or against any principal of the corporation disclosed or undisclosed."  (Bruckner Aff. Ex. A at 39).  Without reaching the question of the applicability of the non-recourse provision, the Court will not undertake a veil-piercing analysis of LRHC, Inc. because plaintiffs made no such pleading in the complaint.  See, e.g., P. Schoenfeld Asset Mgm't LLC v. Cendant Corp., 142 F. Supp. 2d 589, 613-14 (D.N.J. 2001) ("Plaintiffs may not amend the pleadings through assertions contained in a brief.").  The issue is largely immaterial, in any event, as the judgment against LRHC, Inc. is included in the judgment against LRHC Paramus.

### B.  LRHC Toms River

LRHC Toms River is a somewhat more straightforward case, as it was both the holder of the lease and the operator of the club.  In seeking to pierce the corporate veil in this case, plaintiffs rely principally on the following undisputed facts:  (1) the books for all the clubs were maintained at the central office/personal residence of Bob and Lucille Roberts; (2) all of the clubs were insured under the same umbrella insurance policy; (3) Bob and Lucille Roberts made the ultimate decisions with regard to all of the clubs; (4) receipts for all of the clubs were held in the Roberts Paymaster account; and (5) the clubs shared numerous types of operating expenses.

**NOT FOR PUBLICATION**

Plaintiffs additionally allege that funds were taken from the Roberts Paymaster account for defendants' personal expenses, that loans were issued to defendants without proper documentation, and that the club was undercapitalized. Defendants dispute these allegations, arguing that plaintiffs exaggerate and speculate, and that any loans from the Roberts' Paymaster account were repaid before the end of the year. Defendants also argue that the club was adequately capitalized and that it maintained an individual bank account for certain expenses.

In and of themselves, the undisputed facts are inadequate to satisfy the first prong of the veil-piercing analysis. That the clubs shared a central office, insurance, and certain expenses is not enough to establish that defendants were the alter egos of the individual clubs. Even a shared account is not dispositive, especially if accurate books were kept for each individual club. The accounting methods employed by defendants are germane to the veil-piercing analysis, but the Court requires additional findings of fact to make a determination. The extent and nature of defendants' withdrawals as well as the specific impact such withdrawals had on the books of LRHC Toms River are particularly important pieces of evidence which bear on the analysis.

Of additional importance with regard to LRHC Toms River is section 15.02 of the lease, which provides that:

> No recourse shall be had on any Tenant's obligations hereunder or for any claim based thereon or otherwise respect thereof against any incorporator, subscriber to the capital stock, shareholder, officer or director, past present or future, or any corporation or partnership or joint venturer which shall be Tenant hereunder or included in the term "Tenant" or against any principal of the corporation disclosed or undisclosed, or any affiliate of any part which shall be Tenant or included in the terms "Tenant" whether directly or through Tenant or through any receiver assignee, trustee in bankruptcy or through any other person, firm, corporation, whether by virtue of any constitution, statue [sic] or rule of law or by enforcement of any

NOT FOR PUBLICATION

>assessment or rule of law or by enforcement of any assessment or penalty or otherwise all such liability being expressly waived and released by Landlord.

(Bruckner Aff. Ex. G at 23). Defendants argue that this non-recourse provision expressly precludes claims against the principals of LRHC Toms River. Plaintiffs counter that the provision applies only to change of ownership because section 15.02 is titled "Merger: Change of Ownership," and another section of the contract, entitled "Landlord's Remedies," does not contain a non-recourse provision. Plaintiffs also argue that LRHC Toms River is a limited liability "company" and is not covered by the language of the contractual provision, which applies to a "corporation or partnership or joint venturer."

The Court is unpersuaded that the location of the contractual language within the contract or the absence of the term "limited liability company" are sufficient to exclude the non-recourse provision. The language of the provision is plainly intended to limit liability and the scope of the language seems adequate to cover an LLC.[2] The non-recourse provision does little more than restate the limited liability principles inherent in the corporate form, however, and is not an absolute bar to piercing the corporate veil. See, e.g., Siemens Credit Corp. v. 8GPET, Inc., 1992 WL 206289 (N.D. Ill. 1992) (denying summary judgment on a veil-piercing claim, despite the presence of a non-recourse provision). The provision is nevertheless relevant to the Court's analysis insofar as it supports defendants' assertion that plaintiffs were fully aware that they were

---

[2]With regard to the headings, the lease provides that "[t]he captions . . . appearing in this Lease are inserted only as a matter of convenience and in no way amplify, limit, construe, or describe the scope or intent of such Sections of this Lease nor in any way affect this Lease." (Bruckner Aff. Ex. G at 29). With regard to the contractual language, it should be noted that the New Jersey statute providing for LLCs is found in Title 42, "Partnerships and Partnership Associations," N.J.S.A. § 42:2B-1, et seq., and that Lucille Roberts is the general *partner* of LRHC Toms River.

**NOT FOR PUBLICATION**

conducting business with limited liability entities. While unresolved issues of material fact prevent summary judgment on the veil-piercing claim, the non-recourse provision does not dispose of the issue and will not prevent individual liability if the veil is pierced.

      **II. Fraud and Conspiracy to Commit Fraud**

      As an initial matter, defendants invoke the section 15.02 non-recourse provision discussed above. According to defendants, that provision defeats any claims of fraud or conspiracy against the principals of LRHC Toms River. As a matter of public policy, however, a contractual non-recourse provision cannot protect against a valid fraud claim. See <u>Public Service Enterprise Group, Inc. v. Philadelphia Elec. Co.</u>, 722 F. Supp. 184, 214-15 (D.N.J. 1989) ("New Jersey will not enforce an exculpatory clause . . . when it attempts to exculpate a party for . . . an intentional tort, or when the clause is contrary to public policy."); <u>Ganley Bros. v. Butler Bros. Bldg. Co.</u>, 212 N.W. 602 (Minn. 1927) ("The law should not, and does not, permit a covenant of immunity to be drawn that will protect a person against his own fraud. Such is not enforceable because of public policy. Language is not strong enough to write such a contract."). A properly proven claim of fraud against defendants will not be barred by the section 15.02 non-recourse provision.

      Although the claim is not barred by the non-recourse provision, plaintiffs' articulated case for fraud is weak. At no point in their briefing do plaintiffs delineate the standard for common law fraud in New Jersey and apply the facts of this case to that standard. Rather, they simply repeat their allegations that LRHC Paramus and LRHC Toms River were "sham" entities created solely to sign the leases.

**NOT FOR PUBLICATION**

Defendants, on the other hand, correctly point out that legal fraud in New Jersey consists of "a material representation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his detriment." Jewish Center of Sussex County v. Whale, 86 N.J. 619, 624 (1981). Defendants argue that there is no misrepresentation in the record and hence no fraud.

While there is no evidence of affirmative misrepresentation in the record, plaintiffs' claim would still be viable if they were able to demonstrate that defendants knowingly omitted material facts in the execution of the leases. See, e.g., Varacallo v. Massachusetts Mut. Life Ins. Co., 752 A.2d 807 (N.J. Super. Ct. App. Div. 2000) (omission of material fact and knowledge of its materiality satisfy the misrepresentation and falsity elements of legal fraud). However, plaintiffs come perilously close to ceding their claim on this point: "[w]hile the Dominant Shareholders may not have made verbal misrepresentations or omissions in connection with the Mall at IV Lease (or the SP Lease), the Dominant shareholders have engaged in fraudulent conduct by forming a sham entity for the sole purpose of signing the Mall at IV Lease." (Pls.' Opp'n Br. at 26). Unfortunately, plaintiffs do not cite a single case in support of their contention that creating a so-called "sham" entity is adequate to establish fraud. As the allegation of fraud is analyzed under defendants motion for summary judgment, however, and the facts and inferences must therefore be judged in the light most favorable to plaintiffs, a skeptical Court will allow the claim to go forward. If plaintiffs are able to prove that defendants created the entities with the express intent to evade legal obligations under the leases (and not simply to limit individual liability), the Court might be persuaded that this was a material omission adequate to establish fraud.

**NOT FOR PUBLICATION**

Neither party bothered to address the legal requirements of conspiracy in New Jersey or to apply the facts of this case to that standard. "In New Jersey, a civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." <u>Banco Popular North America v. Gandi</u>, 184 N.J. 161, 177 (2005) (internal quotation omitted). "It is enough [for liability] if you understand the general objectives of the scheme, accept them, and agree, either explicitly or implicitly, to do your part to further them." <u>Id.</u> (internal quotation omitted). Applying the facts of this case to the legal standard, the Court will allow the conspiracy claim to go forward. If fraud can be proven on the grounds that defendants devised a scheme to defraud plaintiffs and made material omissions to that end, there is adequate evidence in the record to support a conspiracy claim under New Jersey law.

### III. Fraudulent Transfers

Plaintiffs claim that defendants engaged in fraudulent transfers in violation of N.J.S.A. 25:2-25, <u>et seq.</u>:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> a. With actual intent to hinder, delay, or defraud any creditor of the debtor; or
> b. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>     (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>     (2) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

-16-

**NOT FOR PUBLICATION**

N.J.S.A. § 25:2-25.  The statute additionally provides a list of factors bearing on fraudulent intent, including:

> a. The transfer or obligation was to an insider; b. The debtor retained possession or control of the property transferred after the transfer; c. The transfer or obligation was disclosed or concealed; d. Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; e. The transfer was of substantially all of the debtor's assets; f. The debtor absconded; g. The debtor removed or concealed assets; h. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; i. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; j. The transfer occurred shortly before or shortly after a substantial debt was incurred; and k. The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

N.J.S.A. § 25:2-27.  Plaintiffs assert that Fitness Place Paramus, which is not a defendant in this action, made payments of $245,351 to Lucille Roberts, Kevin Roberts Trust, and Kirk Roberts Trust in 1997 and 1998, despite the undisputed fact that neither Fitness Place Paramus nor LRHC Paramus made any rent payments after June 1997.  Plaintiffs also allege that the transfers made to the central Roberts Paymaster account by LRHC Toms River were fraudulently made by defendants to avoid paying their legal obligations.  Plaintiffs additionally allege that Roberts Paymaster transferred its assets to other entities owned by defendants, arguing that this was part of the overall scheme to defraud plaintiffs.  While the Court is not now convinced that the formation or termination of the Roberts Paymaster central accounting system amounts to impermissible co-mingling of funds or was instituted to perpetrate a fraud, the intent of such a system as well as its impact on the finances of the individual clubs is of importance.  While Fitness Place Paramus is not a defendant in this action, the Court nevertheless finds its transfers relevant in determining the intent and operation of defendants' central accounting system.  The

**NOT FOR PUBLICATION**

circumstances surrounding the loans and disbursements made to defendants via Roberts Paymaster are material facts in issue and bear directly on plaintiffs' allegations of fraudulent transfers.

**CONCLUSION**

"[I]t is recognized that the determination of whether there are sufficient grounds for piercing the corporate veil ordinarily should not be disposed of by summary judgment, in view of the complex economic questions often involved, especially if fraud is alleged." 1 William Meade Fletcher et al., <u>Fletcher Cyclopedia of the Law of Private Corporations</u>, § 41.95 (perm. ed., rev. vol. 1999). That is precisely the case here. As discussed, there are unresolved issues of material fact in determining fraud, injustice, and alter ego in this case. The motions for summary judgment are denied.

<u>s/William H. Walls</u>
United States District Judge

**NOT FOR PUBLICATION**

**Appearances**

Leo V. Levya
James T. Kim
Cole, Schotz, Meisel, Forman & Leonard, P.A.
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, NJ  07602-0800
                Attorneys for Plaintiffs

Philip Elberg
Medvin & Elberg
One Gateway Center
Newark, NJ  07102

Daniel J. Kornstein
Alexander H. Shapiro
Kornstein Veisz Wexler & Pollard, LLP
757 Third Avenue
New York, NY  10017
                Attorneys for Defendants